Phillips, J.
Error to Court of Insolvency.
Tbe action below was to appropriate the property right of the defendant in a street upon which its lands abut, for the purpose of constructing and operating a switch-track along and upon the street.
One question—whether there was error in the charge, as to the nature and the extent of the property right of an abutting land owner. in a street—was reserved for consideration. All other questions were disposed of at the hearing.
*573 Highways were primarily intended for public travel and transportation. But the growing necessities of dense population and of congested business in large towns and cities have led to many public uses of municipal highways that were not originally in actual contemplation, though they are deemed to have been within legal contemplation; and I take it to be the law today that the rights of the public in municipal highways include any and all public uses thereof that are not inconsistent with the uses originally intended. In the nature of things, this enlargement of the uses that the public may rightfully make of municipal highways must go on; and the number and variety of these authorized uses must all the while be more or less indeterminate. They never can be completely catalogued, because we can not say what other public needs may arise to justify additional uses. This brief and compendious statement outlines the rights of the public in municipal highways.
But these rights are not exclusive. Abutting land owners have rights in the highway; and these rights, unlike the public uses, are definite and determinate. They are, the right of access, of light, and of air. These rights arise with the creation of the highway, regardless of the mode of its establishment, and are appendant to the abutting lands; and these are all the rights that have been established by authoritative decisions, as belonging to the owner of abutting lands.
In addition to these private rights or easements, the owner of abutting lands often makes private use of lands within the highway. These private uses may be surface, super-surface, or sub-surface uses; but they rest upon mere license or permission or acquiescence of the public authorities. They are not rights, but privileges, and must give way to any legitimate public use, when required. Elster v. Springfield, 49 O. S., 82.
Only one of these private rights—that of access, or of ingress and egress—was involved in the trial of this case. It was this right of the defendant that the plaintiff sought to appropriate.
In the charge the court, instead of defining the property rights of the defendant in. the street upon which its lands abut, defined in part only the rights of the public in the street, and then said:
*574 “Beyond the nse of the street for street purposes, the public can not go; beyond that, all else is private right, belonging to an abutter. In other words, the abutter retains the right' to make such use of the street, for private purposes, as are not in-' consistent with its use by the public for street purposes. And he may exercise such rights in any manner not inconsistent with the public right. If the right which the abutter seeks to exercise is, or hereafter becomes, an interference with or menace to the right of the public, he must conform to such public use; but until required to give way to a public use, he may use the street for his own private purposes, subject to reasonable regulation. * * * As the uses of the public increase, the rights of the abutter diminishes. * * * You will, therefore, have to determine what is the extent of the use which is now made of this street by the public; then, taking into consideration all the surroundings, what use will probably be made of it in the immediate future, and after the laying of this track? How seriously will the exercise, by the railroad company, of the rights acquired by this suit interfere with the rights of the abutting owner?”
The trial judge but ill-defined the public street uses, and he then told the jury that all other uses, not inconsistent with street uses, belonged to the owner of the abutting lands; and he did not otherwise define the defendant’s rights in the street. He further told the jury that “as the use of the public increases, the rights of the abutter diminish.” This could no.t be so, except as to uses made by mere license or acquiescence of the public; for the juristic rights—the property rights—of the land owner are as inviolate by the public authorities as by the railway company. The court failed to define the property right of the defendant’ that was involved, failed to distinguish between, this juristic right and mere privileges in the street, and in effect instructed the jury to compensate the defendant for loss of mere privileges, for which it had no legal right to compensation:
For these errors, the judgment of the trial court is reversed.